UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALEXANDER GOOD                                                              PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:17-CV-215-DPJ-FKB

UNILOC LUXEMBOURG, S.A.                                                    DEFENDANT

ORDER

Defendant Uniloc Luxembourg, S.A., seeks an order dismissing Plaintiff Alexander Good's Complaint [1] saying it fails to state a claim for which relief can be granted. Because the contracts at issue are ambiguous with regards to the clauses raised in Counts I and II, and the fee-shifting provision raised in Count III does not violate public policy or other equitable doctrines, the Court denies Uniloc's Motion to Dismiss [6].

I.    Facts and Procedural History

This dispute stems from contracts relating to Alexander Good's departure from Uniloc Luxembourg, S.A. Uniloc hired Good as its Chief Executive Officer in 2012 and agreed to a severance package payable to Good if Uniloc ever terminated him without cause. In early 2014, both parties agreed to terminate Good's employment through an Employee Employment Separation and Consulting Agreement ("Separation Agreement") [1-2], in which Good waived his right to receive the severance package pursuant to certain conditions. At the same time, Good and Uniloc entered into a Security Agreement [1-3] to collateralize certain assets in accordance with the Separation Agreement. A few months later, the parties signed a contract entitled "Amendment to the Security Agreement And Employee Employment Separation And Consulting Agreement And Revised Employment Agreement" ("Amendment") [1-4].

Good complains that Uniloc breached these agreements in three ways: (1) disparaging his performance as CEO; (2) failing to disclose financial information; and (3) failing to pay his attorneys' fees. Pl.'s Compl. [1] at G-9. As a result, he claims that he is now due the severance package he agreed to waive in the Separation Agreement. Uniloc disagrees and has filed a Motion to Dismiss [6]. The issues have been fully briefed, and the Court has personal and subject-matter jurisdiction.

II. Standards

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). In ruling on a Rule 12(b)(6) motion, the Court generally considers "the contents of the pleadings, including attachments thereto.'" *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). In this case, that would include the contracts.

Interpreting a contract generally is a question of law. *Cunningham & Co. v. Consolidated Realty Mgmt., Inc.*, 803 F.2d 840, 842 (5th Cir. 1986). And when addressing that question, the Court looks first "to the 'four corners' of the contract" to determine what it says. *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005). Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. *Facilities*, 908 So. 2d at 111. "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Id.* Instead, "[a] contract is ambiguous if it is susceptible to two reasonable interpretations." *Epperson v. SOUTHBank*, 93 So. 3d 10, 19 (Miss. 2012) (citation and punctuation omitted). Finally, a breach-of-contract claim is subject to dismissal where the allegations of the complaint fail to show a breach of the unambiguous language of the contract. *See New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196 (5th Cir. 2016).

III.    Analysis

    A.    Disparaging Comments Regarding Good's Performance

In Count I of his Complaint, Good says Uniloc breached the Separation Agreement by making disparaging comments about his performance as CEO. He premises the claim on statements Uniloc made about Good in a mostly unrelated case that Uniloc filed against its former attorneys in 2016. *See* Uniloc Compl. [1-6] ¶ 12. That suit averred that Good took certain actions for "his own benefit and not the benefit of the Company." *Id.* Uniloc did not, however, sue Good, and the parties now dispute whether the Separation Agreement prohibited such comments in general or just when made by Uniloc in litigation it brings against Good.

All of this turns on subparagraph 2(d) of the Separation Agreement, which states as follows:

> Good has performed his duties as the Chief Executive Officer under the Revised Employment Agreement and as a member of the Company's Board of Directors in full compliance with any and all duties of loyalty or any and all duties of care that Good may have to the Company under applicable law, and the Company agrees that except as may be required by applicable law <u>it shall not take any position to the contrary</u>, *including without limitation, by alleging any breach by Good of any duty of loyalty or any duty of care that Good may have to the Company under applicable law,* <u>in any proceeding or suit against Good by the Company, any of its subsidiaries or affiliates or any board members of stockholders thereof</u>.

Separation Agreement [1-2] ¶ 2(d) (emphasis added).

According to Uniloc, this provision prevents it from disparaging Good only in lawsuits Uniloc initiates against Good. It gets there by construing the punctuation, saying that the commas around the italicized phrase above make it a non-restrictive clause that may be excised without changing the meaning of the underlined text. *See* Def.'s Mem. [7] at 14–16 (citing *The Chicago Manual of Style* ¶¶ 6.22, 6.31 (16th Ed. 2010)). Thus, the contract should be read to say that Uniloc acknowledges Good's compliance with the duty of loyalty and promises "it shall not take any position to the contrary . . . in any proceeding or suit against Good by the Company, any of its subsidiaries or affiliates or any board members of stockholders thereof." Separation Agreement [1-2] ¶ 2.

Of course Good sees it differently, arguing that Uniloc is trying to re-write the contract by taking out the phrase "including without limitation." Good thus says that the second underlined phrase dealing with suits by the company against Good is merely an example of prohibited conduct. In other words, Uniloc acknowledges in subparagraph 2(d) that Good violated no duties while serving as CEO and then promises to "not take any position to the contrary, including without limitation," by suing Good. *See* Pl.'s Mem. [9] at 11–13.

While Uniloc's grammatical argument may be reasonable, the parties' comma usage in this and other provisions seems somewhat indiscriminate. Moreover, Good also offers a

4

construction that is sufficiently reasonable to create ambiguity. And when "a contract is ambiguous and uncertain, questions of fact are presented which are to be resolved by the trier of fact." *Am. Legion Ladnier Post No. 42, Inc. v. City of Ocean Spring*, 562 So. 2d 103, 105 (Miss. 1990). Uniloc's motion is denied as to Count I.[1]

      B.      Financial-Information-Disclosure Clause

Count II likewise alleges breach of contract, but this time the parties dispute whether Good is entitled to the severance benefits under the original employment contract because Uniloc allegedly failed to provide financial information as required in subparagraph 2(d) of the Amendment [1-4]. Neither the Security Agreement nor the Separation Agreement required Uniloc to provide financial information to Good. But the Amendment modified those agreements in certain ways, and the primary dispute as to Count II is whether the financial-disclosure provision became part of the Separation Agreement. In other words, would breaching this new obligation in the Amendment breach the Separation Agreement.

About ten months after signing the Separation Agreement and the Security Agreement, the parties signed the Amendment. While Uniloc describes the Amendment as the "Amendment to Security Agreement," that moniker is misleading. The actual contract is titled: "Amendment to Security Agreement And Employee Employment Separation And Consulting Agreement And Revised Employment Agreement." Amendment [1-4] at 1. Moreover, the Amendment states in its preamble that it amends both the Security Agreement and the Separation Agreement. *See id.*

---

[1] Though not the focus of the parties' briefs, Uniloc also says that Good's construction would make the provision too broad and would prohibit its officers from fulfilling their duties to the board of directors and others. But the Court cannot say as a matter of law that Good's construction is overly broad. And while the provision precludes at least certain types of disparagement, it limits that promise when "required by applicable law." Separation Agreement [1-2] ¶ 2(d). So it should not interfere with the legal duties Uniloc raises.

How the Amendment modifies the other agreements is memorialized in two substantive paragraphs—with subparts. Paragraph 1 of the Amendment begins: "[T]he *Agreement* is amended as follows." *Id.* ¶ 1 (emphasis added). The term "Agreement" is defined as the Security Agreement, indicating that paragraph 1 does not amend any provisions of the Separation Agreement. *Id.*

Subparagraphs 1(a) and 1(b) buttress that construction when they specifically cite the paragraphs from the Security Agreement that are being amended. Subparagraph 1(a) starts by stating, "Paragraph 2 *of the Agreement* is hereby amended and restated as follows." *Id.* ¶ 1(a) (emphasis added). Subparagraph 1(b) similarly begins, "Paragraph 3 *of the Agreement* is hereby amended and restated as follows." *Id.* ¶ 1(b) (emphasis added). Both paragraphs then provide substitutes for the original paragraphs 2 and 3 of the Security Agreement. So while those paragraphs arguably implicate the Separation Agreement, they specifically amend two paragraphs from the Security Agreement.

The only other changes the Amendment makes are found in paragraph 2, entitled "Miscellaneous." Unlike paragraph 1 of the Amendment, paragraph 2 does not state that it is limited to the Security Agreement. *Id.* ¶ 2. And it includes two subparagraphs that are significant here. First, subparagraph 2(d) provides the financial-disclosure requirements Good says Uniloc breached:

> Shareholder Communications. From the date of this Amendment through the date Obligor pays the Secured Party the Consideration Amount, Obligor will provide the Secured Party with copies of all of Obligor's shareholder communications as and when provided to Obligor's shareholders and, at least quarterly, copies of Obligor's internal financial statements and at least once during each calendar year, Obligor's audited financial statements (and all notes and qualifications to such audited financial statements) within 15 days following completion of the audited financial statements by Obligor's independent accountants.

*Id.* ¶ 2(d). Second, paragraph 2(g) states: "Breach. Any breach of this Amendment shall be deemed a breach of the Security Agreement. Any breach of a term or provision of this Amendment which amends the Separation Agreement shall be deemed a breach of the Separation Agreement." Amendment [1-4] ¶ 2(g).

> For purposes of Rule 12(b)(6), Uniloc focuses on subparagraph 2(g), arguing that
>
> [t]he only provisions in the Amendment to Security Agreement that *expressly* amended the Separation Agreement are those set forth in Section 1.b., which contains an express reference in subsection (e) stating "For avoidance of doubt the forgoing is, and shall be deemed for all purposes be, a modification of the Employment Agreement and the Separation Agreement." The Miscellaneous provisions—which contain the language regarding providing financial information—come after that reference to the "forgoing" provisions and thus do not amend the Separation Agreement.

Def.'s Mem. [7] at 17 (emphasis added).

This construction has at least two potential flaws that suggest ambiguity. First, Uniloc identifies "subsection (e)" of subparagraph 1(b) as the only amendment that "expressly" modifies the Separation Agreement. But subparagraph 2(g) does not use the term "expressly," and it is not clear whether the miscellaneous provisions in paragraph 2 of the Amendment apply to the Security Agreement, the Separation Agreement, or both. Unlike paragraph 1 of the Amendment, paragraph 2 is silent on this point, though the title, the preamble, and subparagraph 2(g) all say the Separation Agreement is being modified somehow. Second, subsection (e) that Uniloc cites as the only amendment to the *Separation* Agreement is actually part of the replacement for paragraph 3 of the *Security* Agreement. So the term "forgoing" in subsection (e) may actually refer to the forgoing provisions of the Security Agreement, without impact on the miscellaneous provisions found in paragraph 2 of the Amendment.[2]

---

[2] Uniloc is on notice that the Court may ask it to address whether subparagraph 2(g) means that breaching paragraph 1 of the Amendment will not breach the Separation Agreement.

7

Uniloc's construction is not necessarily unreasonable as a matter of law, but neither is Good's. Accordingly, the Court finds at the Rule 12(b)(6) stage that the contract is ambiguous. Uniloc's motion is denied as to Count II.

C.     Payment of Good's Legal Fees

In Count III, Good says Uniloc breached its contractual duty to pay his legal fees related to this dispute. On January 17 and 30, 2017, Good submitted two invoices for legal fees associated with this case. *See* Compl. [1] ¶¶ 34–36. He did so pursuant to two provisions in the Separation Agreement. First, paragraph 3(b) states:

> [I]f Good elects to seek legal counsel for matters pertaining to this Agreement, the Company agrees to reimburse Good for all legal fees and expenses incurred in the prosecution . . . of such claim(s), it being agreed that reimbursement of legal fees and expenses shall occur on a monthly basis or, at the option of Good, shall be paid directly to Good's attorney's upon the Company's receipt of each monthly invoice.

Separation Agreement [1-2] ¶ 3(b). Similarly, paragraph 6 states: "In the event Good elects to seek legal counsel for matters pertaining to this Agreement . . . the Company agrees to reimburse Good for all legal fees and expenses incurred in such claim(s)." *Id.* ¶ 6. Uniloc now urges the Court to void these provisions as substantively unconscionable or contrary to Mississippi public policy. These arguments are unpersuasive.

Unconscionability is the "absence of meaningful choice on the part of one of the parties, together with contract terms [that] are unreasonably favorable to the other party." *Cleveland v. Mann*, 942 So. 2d 108, 114 (Miss. 2006) (internal citation and quotation marks omitted). Unconscionability comes in two forms, procedural and substantive. *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002). Uniloc correctly limits its Rule 12(b)(6) motion to substantive unconscionability, which the Mississippi Supreme Court defines as follows:

> Under substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties. Substantive unconscionability is proven by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach.

*Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699–700 (Miss. 2009) (citation and quotation marks omitted). Some cases have also said that substantive unconscionablility exists when the "terms bear no reasonable relationship to business risks assumed by the parties." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006).

Uniloc says the fee arrangement is unconscionable in part because only Good is entitled to recover fees. But a similar issue arose in *H.A.S. Electrical Contractors, Inc., v. Hemphill Construction Co., Inc.*, where the party ordered to pay attorney's fees in a contract dispute argued that the provision was unconscionable because it was similarly one sided. No. 2015-CA-00596-SCT, 2017 WL 4546761, at *9 (Miss. Oct. 12, 2017). The Mississippi Supreme Court rejected the argument, noting, "[W]e have upheld one-sided provisions like this one." *Id.* While the Mississippi Supreme Court acknowledged that one-sided terms can be unconscionable when found in contracts of adhesion, the *H.A.S.* contract was "between two businesses." *Id.* Finally, the court stated, "As we have held, to enforce a contract 'without enforcing the clause addressing attorney fees would be contrary to the law.'" *Id.* (quoting *Theobald v. Nosser*, 752 So. 2d 1036, 1042 (Miss. 1999)).

Like the appellant in *H.A.S.*, Uniloc cites cases involving contracts of adhesion. *See* Def.'s Mem. [7] at 20−21; *see, e.g.*, *Weidman v. Tomaselli*, 365 N.Y.S.2d 681 (N.Y. County Ct. 1975). But this was not such a contract. Uniloc is a business, and according to the Complaint,

9

Uniloc was represented by counsel during the negotiations over the Separation Agreement. *See* Compl. [1] ¶ 15.

Uniloc also says the fee provisions are unconscionable because they are not limited to reasonable fees, thus forcing Uniloc to write a blank check for a suit against itself regardless of the merit or the reasonableness of the fees Good incurs. Def.'s Mem. [7] at 19–21. It later puts a different spin on the same idea, saying that Good's severance waiver was illusory because he could void the contract by commencing meritless litigation against Uniloc while forcing Uniloc to foot the bill. Def.'s Reply [12] at 5.

Uniloc is factually correct that the Separation Agreement allows fees even if Good does not prevail, and there is no stated reasonableness requirement. *See* Separation Agreement [1-2] ¶¶ 3(b), 6. But, as noted in *Covenant Health & Rehab. of Picayune, LP*, the "law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract . . ." 14 So. 3d at 700 (citation omitted). Along these same lines, courts "generally will infer a reasonableness requirement in all contractual fee provisions as a matter of public policy," even when the contract contains no such provision. *Spirtas Co. v. Ins. Co. of the State of Pa.*, 555 F.3d 647, 653 (8th Cir. 2009).

The Fifth Circuit faced a somewhat similar issue in *Frew v. Traylor*, where class-action plaintiffs obtained a favorable decree under 42 U.S.C. § 1988. 688 F. App'x 249 (5th Cir. 2017), *as revised* (Apr. 28, 2017). The decree contemplated future legal issues, and the parties entered an agreed order proving that the "Plaintiffs [were] entitled to recover attorney's fees, costs and expenses related to their counsel's work on this case." *Id.* Some years later, the plaintiffs lost a disputed motion but were nevertheless awarded fees. *Id.* at 253. Significantly, the district court "rejected Defendants['] request to analyze the reasonableness of the fees based on the degree of

Plaintiffs' success, finding that because the basis of the fees was the agreed-upon Corrective Action Order and 2007 Fee Order, the 'success or failure of the work' did not 'determine [ ] payment in this instance.'" *Id.* The Fifth Circuit reversed, "conclud[ing] that even if the 2007 Fee Order entitles Plaintiffs to attorneys' fees throughout this litigation, it does not exempt the requested fees from the judicial scrutiny for reasonableness that typically applies to prevailing party fee requests." *Id.* at 257

The *Frew* decision is admittedly a bit different because the plaintiffs there had already obtained a favorable decree. *See id.* at 254–55. Moreover, the defendants did not argue unconscionability. But the court did examine the issue from a contractual standpoint. *Id.* at 257–58. And it found support in a treatise on attorneys' fees that noted: "When an award of attorneys's [sic] fees is authorized by contract, the fee awarded must be reasonable even in the absence of a provision requiring that the fee be reasonable." *Id.* at 258 (quoting Robert L. Rossi, *Attorneys' Fees* § 9:36 (2016)); *see also id.* (citing *Spirtas Co.*, 555 F.3d at 653). Good cites *Frew* for this point, apparently acknowledging that the fees must be reasonable. And at this threshold stage, *Frew* at least supports the notion that the fee provision should not be voided for lack of a specific reasonableness clause.[3]

---

[3] Good's reliance on *Frew* may become more complicated in the near future. On August 8, 2017, Good filed a motion for preliminary injunction asserting that Uniloc should immediately begin paying his fees. *See* Pl.'s Mot. [13]. That motion was only recently briefed, but in his memorandum of law, Good again relies on *Frew*, arguing that "reasonableness can be inferred." Pl.'s Mem. [14] at 16. Assuming he is correct, Good may not fully embrace the *Frew* holding, which also states that "courts often engage in full reasonableness review, which includes considering the result obtained as one factor, even for attorney fee awards provided by contract." *Frew*, 688 F. App'x at 258. At some point, the Court will need clarification on *Frew* and whether it means that reasonableness cannot be fully determined until plaintiff has shown some success.

11

More generally, the terms of the fee arrangement favor Good, but Uniloc has not shown as a matter of law that it was "deprived of all the benefits of the agreement or left without a remedy for [Good's] nonperformance or breach." *Covenant Health & Rehab. of Picayune, LP*, 14 So. 3d at 700. Nor has Uniloc shown as a matter of law that the "terms bear no reasonable relationship to business risks assumed by the parties." *MS Credit Ctr., Inc.*, 926 So. 2d at 177. As long as Uniloc performed, Good would waive his sizable severance benefits. And if Good breached the agreement, then Uniloc was free to initiate suit, even if it might be forced to pay Good's fees.

Turning to public policy, Uniloc starts on familiar ground, arguing that under Mississippi Rule of Professional Conduct 1.5, fees must be reasonable. But again, reasonableness may be inferred. *Frew*, 688 F. App'x at 258. Uniloc then says the contract, though not technically champertous, raises similar improper motives to pursue litigation. *See* Def.'s Reply [12] at 6. But given the discussion above regarding reasonableness and the duty of good faith and fair dealing, the argument is not sufficient to void the contract under Rule 12(b)(6). Finally, Uniloc notes that other states have adopted statutes generally allowing a prevailing party to receive fees even if the other party is listed in the contract as being entitled to fees. *See* Def.'s Mem. [7] at 23−24 (citing Cal. Civ. Code § 1717; Wash. Rev. Code Ann. § 4.84.330; Fla. Stat. Ann. § 57.105; Utah Code Ann. § 78B-5-826). Mississippi has not adopted a similar statute, and it is not apparent that these statutes establish Mississippi public policy against the fee provision in this case.

The only remaining dispute as to Count III is whether the bills that have been previously submitted are sufficiently linked to this suit. As quoted above, paragraph 3(b) says the fees must relate to the "prosecution" of claims against Uniloc. Separation Agreement [1-2] ¶ 3(b).

Paragraph 6 allows fees for "legal counsel for matters pertaining to this Agreement." *Id.* ¶ 6. But it also limits these fees to "expenses incurred in such claim[s]." *Id.* Accordingly, to the extent that the fees relate to these claims or this prosecution, they fall within the scope of paragraphs 3(b) and 6, which presents another question of fact. Viewing the Complaint in the light most favorable to Good under Rule 12(b)(6), the Court concludes at the pleading stage that the fees are related to those allowed by contract. While the facts may eventually prove otherwise, this is not a basis for dismissal. For all these reasons, Uniloc's motion is denied as to Count III.

III.     Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the reasons given, Uniloc's Motion to Dismiss [6] is denied.

Given these rulings, Good's pending Motion for Preliminary Injunction, and the other issues identified herein, the Court believes the parties should again discuss settlement before incurring any additional fees and expenses. Accordingly, the parties are instructed to confer and then contact the Chambers of United States Magistrate Judge F. Keith Ball no later than November 3, 2017, to discuss this issue.

**SO ORDERED AND ADJUDGED** this the 23rd day of October, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE